UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                              )
DAWN MARIE DOYLE,             )
                              )
              Plaintiff,      )
                              )         CIVIL ACTION
        v.                    )         No. 13-12382-WGY
                              )
CAROLYN W. COLVIN,            )
Acting Commissioner of Social )
Security,                     )
                              )
              Defendant.      )
_____)
```

YOUNG, D.J.                              January 22, 2015

MEMORANDUM AND ORDER

I.    **INTRODUCTION**

       The Plaintiff, Dawn Marie Doyle ("Doyle"), brings this

action under Section 205(g) of the Social Security Act, 42

U.S.C. § 405(g).  Doyle seeks judicial review of the final

decision of the Commissioner of Social Security ("the

Commissioner").

       **A.    Procedural History**

       Doyle submitted an application for Disability Insurance

Benefits on May 12, 2010.  Soc. Sec. Admin. R./Tr. ("Admin. R.")

120-26, ECF No. 13.  Doyle alleged that she became disabled and

unable to work on February 26, 2010.  Id. at 120.  Her claim for

1

disability insurance benefits was denied on August 30, 2010.
Id. at 49-51.  On December 16, 2010, Doyle's subsequent request
for reconsideration was also denied.  Id. at 52-54.  Doyle
(accompanied by counsel) received a hearing on July 5, 2012,
before an Administrative Law Judge (the "hearing officer").  Id.
at 25-46.  The hearing officer denied her claim on July 19,
2012, and Doyle petitioned the Appeals Council for review of the
decision.  Id. at 6-17, 22.  The Appeals Council denied her
request for review on August 24, 2013, rendering the hearing
officer's July 19 decision the Commissioner's final decision.
Id. at 1-5.

Doyle filed her complaint requesting review of the
Commissioner's final decision on September 26, 2013.  Compl.,
ECF No. 1.  The Commissioner filed with the Court a copy of the
administrative record of Doyle's claim on February 18, 2014.
See Admin. R.  Doyle filed a motion for judgment on the
pleadings and an accompanying memorandum in support on March 31,
2014.  Pl.'s Mot. J., ECF No. 14; Pl.'s Br. Supp. Mot. J.
("Pl.'s Br."), ECF No. 15.  On May 9, 2014, the Commissioner
filed her own motion for judgment and memorandum.  Def.'s Mot.
Affirm Decision Comm'r, ECF No. 17;  Mem. Supp. Def.'s Mot.
Affirm Decision Comm'r ("Def.'s Br."), ECF No. 18.

**B.    Factual Background**

Dawn Marie Doyle is a 47-year-old woman currently residing in an apartment in Marlborough, Massachusetts with her boyfriend.  Admin. R. 28, 120.  She is unemployed and last worked as a cashier in February of 2010.  Id. at 29.  She previously worked at Friendly's and a DVD rental store; she has also been employed as a cook.  Id. at 28-29.  Doyle alleges that she became disabled on February 26, 2010, as a result of costochondritis of the left costochondral junctions, sinus tachycardia, palpations/mesyncope and migraines.  Pl.'s Br. 4.

## II.  MEDICAL EVIDENCE

The earliest piece of medical evidence of Doyle's disability to appear in the record documents Doyle's visit to Signature Healthcare on March 2, 2010.  Admin. R. 386-87.  She complained of pressure in her chest, pain in her chest when she moved her arms, dizziness, headaches, palpitations, and anxiety.  Id. at 386.  The physical exam reported that she was not in acute distress, had no cardiac murmurs, and had no wheezing or crackling in her lungs.  Id.  The exam did show tenderness over the left fifth and sixth costochondral junction.  Id.  Doyle was prescribed 800 MG ibuprofen for chest pain and discomfort and encouraged to restart salt tablets to treat her dizziness.  Id. at 387.

She visited Signature Healthcare on March 19, 2010, for a two-week follow-up exam.  Id. at 388.  Her physical complaints

included chest pain, pain when lifting gallon milk jugs, and several instances of coughing up blood. Id. The physical exam showed that she was not in acute distress, had no cardiac murmurs, and had no wheezing or crackling in the lungs. Id. There was still tenderness over the third and fifth costochondral junctions on the left side. Id.

On March 24, 2010, Doyle was again examined at Signature Healthcare for chest pain, palpitations, and shortness of breath at night. Id. at 390. The examiner noted that she was in no apparent distress and appeared comfortable. Id. Examinations of the head, heart, abdomen, and extremities were normal. Id. A chest examination showed tenderness on palpation of the left fourth costochondral junction, but was otherwise normal. Id. The report concluded that Doyle's "symptoms of chest pain are clearly musculoskeletal" and suggested rib films to rule out rib pathology. Id. at 391.

On March 31, 2010, Doyle reported to her psychiatrist that her sleep was disrupted by coughing. Id. at 322. Her psychiatrist noted that she had costochondritis and had been diagnosed with pneumonia. Id. Doyle also reported continued heart palpitations. Id.

On April 2, 2010, Doyle was seen at Signature Healthcare for chest pain and dizziness. Id. at 392. The exam showed no acute distress, cardiac murmurs, or lung concerns. Id. Doyle

continued to experience pain in the fourth and fifth

costochondral regions.  Id.

   Doyle underwent a chest scan at Brockton Hospital on April 6,

2010.  Id. at 305.  The scan showed a small focal linear

atelectasis in the lower posterior left lung base, no focal lung

mass lesion or mediastinal lymphadenopathy, and no thoracic

aortic aneurysm or dissection.  Id.  Additionally, Doyle

received a transthoracic echocardiogram that showed the left and

right atria and ventricles to be of normal size, with no

evidence of aortic or mitral regurgitation or stenosis.  Id. at

310.  The report concluded that the echocardiography was within

normal limits.  Id. at 311.

   Doyle was seen at Signature Healthcare for migraines on

April 12, 2010.  Id. at 394.  The physical exam showed that she

was not in acute distress, and all other exams were normal.  Id.

at 395-96.  Doyle was seen for a follow-up appointment on April

13, 2010.  Id. at 398.  The examiner reported that she was in no

acute distress and all test results were normal.  Id.

   On April 17, 2010, Doyle received an MRI of the brain.  Id.

at 307.  The report showed a normal scan with no acute cerebral

infarction and no focal cerebral arterial lesion or stenosis.

Id. at 307-08.

   An EEG on April 27, 2010, revealed no significant

abnormalities.  Id. at 313.  The following day, a carotid duplex

examination showed normal morphology with no appreciable plaque formation or stenosis in either extracranial carotid system. Id. at 314.

Doyle sought treatment at Signature Healthcare on May 19, 2010, complaining of rib pain. Id. at 403. Again, she presented in no acute distress and with normal examination results. Id. at 404. Follow-up exams on June 1 and 2, 2010, yielded the same findings. Id. at 408, 410.

She sought treatment at Signature Healthcare on June 4, 2010, for muscle pain. Id. at 412. Again, the examiner observed her to be comfortable with normal exam results. Id. at 413-14. The examiner did note continued pain associated with costochondritis. Id. at 414.

Doyle sought treatment on June 29, 2010, for palpitations. Id. at 415. Her physical exam was normal. Id. The examiner informed Doyle that the diagnosis was most likely inappropriate sinus tachycardia, and she recommended that Doyle receive an implantable loop recorder capable of providing more definitive results. Id. at 417.

On July 20, 2010, Doyle returned to Signature Healthcare to receive lab reports and complete SSI paperwork. Id. at 418. Dr. Erika Bradford ("Dr. Bradford"), Doyle's primary care physician, completed an Emergency Aid to Elders, Disabled and Children ("EAEDC") medical report – required in an application

for SSI benefits.  Id. at 474-81.  The EAEDC report listed costochondritis and palpitations as Doyle's diagnosis.  Id. at 476.  The report also indicated that Doyle had received several tests for both diagnoses, as well as for pre-syncope and migraines.  See id. at 474.  Her test results for pre-syncope and migraines were negative.  Id.  Her physical exam yielded results consistent with previous exams.  See id. at 475.  Dr. Bradford concluded that Doyle's conditions did not match a listed SSI impairment but did affect her ability to work, and that the condition was likely to last for three to six months. Id. at 480.

On July 28, 2010, Mary Ford Clark, Psy.D. ("Dr. Clark") conducted a Psychiatric Review Technique report.  Id. at 352. Dr. Clark, a non-examining state agency medical consultant, Def.'s Br. 6, concluded that Doyle had a non-severe anxiety-related disorder.  Admin. R. 352.  The anxiety disorder was evidenced by "[r]ecurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on the average at least once a week."  Id. at 357.  Further, the report noted mild difficulties in maintaining social functioning, but no impairment in activities of daily living, difficulties in maintaining concentration, or extended episodes of decomposition.  Id. at 362.  In her notes, Dr. Clark states that

Doyle no longer experienced panic attacks with her new
medication regimen.  Id. at 364.  Dr. Clark also noted that
Doyle is able to "prepare meals, do household chores with some
assistance, go out alone, shop in stores, drive, watch
television, work on puzzles, visit her mom and swim."  Id.

On August 3, 2010, Doyle returned to Signature Healthcare
to have the stitches removed from the implantable recorder that
had been implanted eight days earlier.  Id. at 422.  The
physical exam showed no irregularities.  Id. at 423.  The
treating physician recommended Tylenol and Motrin for chest
discomfort at the implantation site.  Id.

Dr. Barbara Trockman ("Dr. Trockman"), a non-examining
physician, Def.'s Br. 7, completed the residual functional
capacity assessment ("RFCA") on August 6, 2010.  Admin. R. 365-
72.  Dr. Trockman's report listed Doyle's primary diagnosis as
sinus tachycardia, with a secondary diagnosis of migraines and
paresthesia as an alleged impairment.  Id. at 365.  Evaluating
Doyle's exertional limitations, the RFCA noted that she was able
to occasionally lift 20 pounds, frequently lift 10 pounds, stand
or walk with normal breaks for about six hours in an eight-hour
work day, and push or pull without limitation.  Id. at 366.
Turning to postural limitations, the report found that Doyle
occasionally could climb ramps, stairs, ladders, ropes and
scaffolds; frequently perform balancing, stooping, kneeling and

crawling; and occasionally perform crouching. Id. at 367. Doyle had no established manipulative, visual, or communicative limitations. Id. at 368-69. The RFCA noted only one environmental limitation, recommending that Doyle avoid concentrated exposure to hazards. Id. at 369. Dr. Trockman commented that Doyle was independent in activities of daily living, but noted that Doyle's alleged difficulty with physical activities was somewhat credible. Id. at 367.

On August 19, 2010, Dr. Bradford wrote a letter describing Doyle's treatment while under her care. Id. at 378. Dr. Bradford noted that Doyle had already been diagnosed with anxiety when she began treating her. Id. Doyle presented with palpitations and syncope/pre-syncope. Id. Dr. Bradford reported several medical examinations, including a holter monitor, nuclear stress test, echocardiogram, and an event monitor. Id. All tests yielded normal results. Id. Dr. Bradford noted that increased salt intake produced a slight reduction in pre-syncopal episodes. Id. In addition to the heart-related symptoms, Dr. Bradford acknowledged that Doyle also complained of headaches. Id. at 379. In order to discern the cause of the headaches, Doyle received an EEG and MRI/MRA, both of which yielded normal results. Id. Dr. Bradford concluded that Doyle is most limited by her costochondritis based on Doyle's report to the doctor that she was unable to

lift more than five to eight pounds.  Id.  She also noted that a

functional capacity exam was ordered but had not yet been

completed.  Id.

On September 21, 2010, Edward M. Powers, Ph.D. ("Dr.

Powers") completed a psychological assessment report concerning

Doyle.  Id. at 523-25.  Dr. Powers noted that over the past two

years Doyle had received outpatient treatment for psychiatric

concerns in the form of bi-monthly individual counseling and

quarterly medication consultations.  Id. at 524.  The report

stated that Doyle's symptoms were originally believed to be

related to a panic disorder, but they are "better understood to

have been cardiac-related."  Id.  Doyle reported that a typical

day ran from 4:30 AM to 9:00 PM, and consisted mainly of

domestic activities.  Id.  Dr. Powers noted that Doyle's motor

status and activity level were unremarkable, and there were no

observable postural or gait-related defects.  Id.  During the

interview, her affect was alert and she was calm, but Dr. Powers

noted Doyle's frustration with her physical symptoms and the

difficulty she had in treating them.  Id.  Finally, Dr. Powers

reported that Doyle's thought process appeared normal with no

evidence of psychosis or disturbances in perception.  Id. at

525.  Doyle displayed no memory or concentration impairments, no

evidence of impulsivity, normal judgment, and normal social

reasoning.  _Id._  Dr. Powers concluded that no near-term changes

in Doyle's levels of functioning were likely.  _Id._

On December 15, 2010, Dr. Mark Colb ("Dr. Colb"), a non-

examining physician, Def.'s Br. 8, completed a Physical Residual

Functional Capacity Assessment.  Admin. R. 546-53.  The primary

diagnosis was costochondritis with a secondary diagnosis of

palpitations/presyncope; Doyle's migraines were listed as "other

alleged impairments."  _Id._ at 546.  Regarding Doyle's exertional

limitations, Dr. Colb said that she was occasionally able to

lift 20 pounds, frequently able to lift ten pounds, able to

stand and/or walk six hours in an eight-hour work day, and had

no limits on her ability to push and pull.  _Id._ at 547.  In

explaining his determination, the doctor noted that all tests

associated with palpitations/presyncope and migraines were

negative.  _Id._  Discussing postural limitations, the doctor

determined that Doyle could occasionally climb, balance, stoop,

kneel, crouch, and crawl.  _Id._ at 548.  With reference to

manipulative limitations, the report noted a limited ability to

reach in all directions, but an unlimited ability with respect

to handling, fingering, and feeling.  _Id._ at 549.  There were no

noted visual, communicative, or environmental limitations.  _Id._

at 549-50.

In June 2012, T.J. Latimer ("Latimer"), Doyle's mental

health counselor, wrote a letter addressed to Dr. Jagmeet Singh,

a heart specialist at Massachusetts General Hospital, regarding
an upcoming appointment with Doyle.  Id. at 557.  In the letter,
Latimer informed Dr. Singh that that after four to five months
of treatment, Latimer concluded that Doyle did not suffer from
panic disorder or another anxiety disorder.  Id.  Latimer stated
that both he and his colleague Dr. John Cowl, Doyle's
psychiatrist, independently came to the decision that Doyle's
mental suffering was due to her cardiac condition rather than a
purely psychiatric disorder.  Id.  He opined that her symptoms
are medically related, and furthermore, that her physical
symptoms are quite severe.  See id.

At the Social Security Administration hearing on July 5,
2012, Doyle testified that she last worked on February 26, 2010.
Id. at 29.  She told the hearing officer that she has multiple
episodes of palpitations each day.  Id. at 30.  She also stated
that the episodes are so significant that her body shakes
uncontrollably and the pounding in her chest is outwardly
visible.  Id. 30-31.  She further testified that after these
incidents she experiences headaches and fatigue requiring her to
lie down for a couple of hours.  Id. at 32.  Doyle also
testified as to the limiting effect that her symptoms have on
her activities of daily living.  Id. at 33-37.  Specifically,
she noted that several times she was unable to lift her
grandchild, who weighs approximately twenty pounds.  Id. at 34.

She also told the hearing officer that she is unable to engage in strenuous activity because the exertion increases the severity of the symptoms.  Id. at 36.  She stated that she used to drive frequently, but due to her symptoms she will now only drive short distances.  Id. at 36-37.  She also testified that she had experienced a significant reduction in social activities due to these cardiac episodes.  Id. at 34.  Doyle also commented that she relies heavily on her boyfriend and daughter to complete domestic routines.  Id. at 36-37.  She further stated that doctors and treatment providers had witnessed the episodes as she describes them.  Id. at 37.

Carol Gagman ("Gagman"), Doyle's mother, also testified at the hearing.  Id. at 41.  She testified that she had observed many of the episodes to which Doyle refers.  Id. at 42.  According to Gagman, Doyle's heartbeat is visible through her chest, and during her cardiac episodes she loses color in her face.  Id.  Gagman also testified that Doyle requires several hours of rest following each episode and has experienced a significant reduction in social activities.  Id. at 43.

**III. LEGAL FRAMEWORK**

**A.    Standard of Review**

This Court has jurisdiction to review final decisions of the Commissioner of Social Security.  42 U.S.C. § 405(g); 20 C.F.R. § 404.981.  The Court may affirm, modify, or reverse the

Commissioner's decision. 42 U.S.C. § 405(g). The Court's review, however, is limited: it must affirm findings of the Commissioner "as to any fact, if supported by substantial evidence." Id. The Commissioner ultimately is responsible for determining questions of credibility and fact. Irlanda Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). Therefore, this Court must accept a finding of the Commissioner so long as "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [her] conclusion." Id. (quoting Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

**B.   Social Security Disability Standard**

A claimant is deemed disabled for Social Security benefit purposes if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

By regulation of the Social Security Administration, the hearing officer must employ a five-step analysis to determine whether an applicant is disabled. 20 C.F.R. § 404.1520(a)(4). The hearing officer must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment

meets or medically equals an impairment listed in Appendix 1 of
Subpart P of Part 404 of Title 20 of the Code of Federal
Regulations; (4) whether the claimant has the residual
functional capacity to perform his or her past relevant work;
and (5) whether the impairment prevents the claimant from doing
any other work considering the claimant's age, education, and
work experience.  Id.  The applicant has the burden of proof at
steps one through four, but the burden then shifts to the
Commissioner at step five.  Goodermote v. Sec'y of Health &
Human Servs., 690 F.2d 5, 7 (1st Cir. 1982).  At step five, the
Commissioner "must show that there are other jobs in the economy
that claimant can nonetheless perform."  Id.

## IV.   THE HEARING OFFICER'S DECISION

The hearing officer conducted the required five-step
analysis.  Admin. R. 11-17.  At the first step, the hearing
officer found that Doyle had not engaged in substantial gainful
activity since the alleged date of the onset of disability,
February 26, 2010.  Id. at 11.  The hearing officer proceeded to
step two and found that Doyle had the following severe
impairments: costochondritis of the left costochondral junctions
associated with chest and left shoulder pain, sinus tachycardia,
palpations/presyncope, and migraines.  Id.  The hearing officer
explained that, in making this determination, he considered all
of the evidence, specifically the reports of Latimer, Doyle's

15

mental health counselor, stating that Doyle did not have a
severe panic or anxiety disorder. Id. at 11-12. The hearing
officer went on to reference the medical evidence used to
support his severe impairment findings. Id. at 12-15. At step
three, the hearing officer found that Doyle "does not have an
impairment or combination of impairments that meets or medically
equals the severity of one of the listed impairments in 20 CFR
Part 404, Subpart P, Appendix 1." Id. at 15.

Proceeding to step four, the hearing officer found that
after review and consideration of the entire record, Doyle "has
the residual functional capacity to perform light work as
defined by 20 CFR 404.1567(b)." Id. at 15. He explained that
in making this finding he considered all of Doyle's symptoms to
the extent that they were consistent with the objective medical
evidence. Id. Further, he described the two-step process used
in considering Doyle's subjective report of her symptoms. Id.
He explained that first he must evaluate whether there is an
underlying medically determinable physical or mental impairment
which could reasonably be expected to produce the symptoms Doyle
alleges. Id. Second, if a medically determinable condition
exists, the hearing officer must evaluate the intensity,
persistence, and limiting effects of the symptoms. Id. At this
stage, the hearing officer noted that he must assess the
credibility of Doyle's claims based on the entire record. Id.

The hearing officer ultimately determined that Doyle's

statements "concerning the intensity, persistence and limiting

effects of these symptoms are not credible to the extent they

are inconsistent with the above residual functional capacity

assessment." Id. at 16. Based on his determinations at steps

one through four, the hearing officer concluded that Doyle is

capable of performing her past work as a cashier because the job

does not require her to perform work outside of her residual

functional capacity. Id.

## V.    ANALYSIS

Although the brief supplied by Doyle's counsel is not

entirely clear, it appears that she asserts that the hearing

officer's determination is flawed in three ways. See Pl.'s Br.

First, Doyle claims that the hearing officer's finding that she

has the residual functional capacity to perform light work is

not supported by substantial evidence, because the hearing

officer failed to give sufficient credibility and weight to her

testimony as to the limiting effects of her symptoms. Id. at 3-

9. Second, Doyle complains the hearing officer gave greater

evidentiary weight to reports of non-examining physicians over

evidence provided by direct care providers. Pl.'s Br. 9-10.

Finally, Doyle asserts that the hearing officer erroneously

analyzed her case as a claim based upon a psychiatric disability

when in fact, Doyle suffers from a physical medical disability.
Id. at 10.

**A.    Credibility Determination**

**1.    Doyle's Argument**

Doyle argues that the hearing officer erred in his
determination that Doyle's testimony as to the limiting effects
of her symptoms was not credible.   Id. at 6.   She claims that
her own testimony that she is unable to perform her previous job
as a cashier, as well as the corroborating testimony and
statements of others, constitute substantial evidence requiring
a finding that Doyle cannot perform light work.   Id. at 5-6.

To support her argument, Doyle points to the corroborating
testimony and statements of family members.   Id. at 6.   In
addition to her mother's testimony at the hearing, Doyle also
identifies a letter from her daughter, Amanda Doyle, as
corroborating evidence.   Admin. R. 216.   Amanda Doyle's
handwritten letter is addressed "[t]o whom it may concern," and
contains several statements including: "I've witnessed my mother
drop my son on two different days. . . . There has also been
other events in the car my mother having to pull over and ask me
to drive because she was entirely way too dizzy."   Id.   Finally,
Doyle asserts that her testimony and the corroborating evidence
are consistent with the medical record, but she does not cite

any documentation in the medical record to support this assertion.  See Pl.'s Br.

Doyle argues that the hearing officer "rejected the Claimant's testimony to the extent that the testimony did not support the [hearing officer]'s preliminary presumptive findings." Pl.'s Br. 6.  She claims that the hearing officer must address her subjective complaints.  Id. at 7 (citing Avery v. Sec'y of Health & Human Servs., 797 F.2d 19 (1st Cir. 1986)).  Further, Doyle asserts that the credibility of her subjective complaints was not determined using the several factors for assessing pain enumerated in the regulations.  Id. (citing 20 C.F.R. § 404.1529(c)(3)).  Doyle concludes that because her own testimony, her mother's testimony, and her daughter's letter all characterize Doyle as unable to perform her work duties, the hearing officer erred in his determination the she could perform light work.

### 2. Legal Framework for Determining Credibility on the Issue of Residual Functional Capacity

This Court must uphold the findings of the Commissioner unless they are against the substantial weight of the evidence. 42 U.S.C. § 405(g).  Doyle bears the burden of proving that she is disabled, and as such, she must prove that her impairment prevents her from obtaining substantial gainful employment.  20 C.F.R. §§ 404.1520, 404.1512(c).  In considering the evidence to

determine a residual functional capacity, the hearing officer
must consider objective medical evidence as well as the
claimant's alleged symptoms including claims of pain.  Id. §
404.1529(a).  The regulations, however, also make clear that
subjective complaints must be considered to the extent "to which
[a claimant's] symptoms can reasonably be accepted as consistent
with the objective medical evidence and other evidence."  Id.
Section 404.1529 goes on to define objective medical evidence as
medical signs and laboratory findings; and other evidence such
as "statements or reports from [the claimant, her] treating or
nontreating source, and others about [the claimant's] medical
history, diagnosis, prescribed treatment, daily activities,
efforts to work, and any other evidence showing how [the
claimant's] impairment(s) and any related symptoms affect [the
claimant's] ability to work."  Id.

        When the hearing officer considers other evidence of
symptoms, including pain and limiting capacity, the
consideration must follow a two-step process.  First, the
hearing officer must determine whether the claimant has a
medically determinable impairment which could reasonably be
expected to cause the alleged symptoms.  Avery, 797 F.2d at 27-
29.  Second, the hearing officer must then assess the
credibility of the claimed intensity and limiting capacity of
the alleged symptoms by considering the following factors: (1)

the nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2) precipitating and aggravating factors; (3) type, dosage, effectiveness, and adverse side effects of any pain medication; (4) treatment, other than medication, for relief of pain; (5) functional restrictions; and (6) the claimant's daily activities. Avery, 797 F.2d at 29; 20 C.F.R. § 404.1529(c)(3). These other forms of evidence must be consistent with medically objective evidence. 20 C.F.R. § 404.1529(a).

### 3. Sufficiency of the Hearing Officer's Credibility Determination

Doyle claims that the frequency, intensity, and unpredictable nature of her symptoms prevent her from engaging in substantial gainful activity. Pl.'s Br. 5-6. The hearing officer, however, found that Doyle has the residual functional capacity to perform light work, and proceeded to explain how he came to this determination.

First, the hearing officer found that Doyle does have a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. Admin. R. 16. Doyle does not take issue with this finding. The hearing officer continued on to determine the credibility of Doyle's claims as to the intensity and limiting effect of the symptoms. Id. At this stage of the analysis the hearing officer stated that "the

claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Id. The hearing officer went on to explain the medical and other evidence that supported his conclusion, referring to medical reports, medical opinions, and Doyle's testimony to support the final determination. See id.

Specifically, the hearing officer noted the report of Dr. Bradford, Doyle's primary care physician, in which Dr. Bradford wrote that numerous medical tests were negative with results within a normal range. Id. The hearing officer then turned to the opinion evidence used in his determination. Id. He relied on Dr. Colb's physical residual functional capacity assessment, which found that Doyle was capable of light work. Id. Additionally, he referred to Dr. Clark's opinion that Doyle's panic attacks were not a severe impairment. Id. The hearing officer again pointed to Dr. Bradford's documentation showing that all of Doyle's diagnostic medical tests yielded normal results. Id. Finally, he referred to the testimony of Doyle herself, when she stated that she is able to drive an automobile short distances and feels diminished stress due to her medical treatment. Id.

The hearing officer did not ignore Doyle's testimony as she now claims. To the contrary, he referred specifically to her

testimony when explaining his determination. Id. The hearing officer must accept a claimant's subjective testimony, but only to the extent that it is consistent with the objective medical evidence. 20 C.F.R. § 404.1529(a). Doyle's testimony as to her limited capacity is inconsistent with the objective medical evidence because the medical evidence consistently describes her as being in no acute distress with normal test results, suggesting that she is able to perform light work. Additionally, this Court may only overturn the hearing officer's confirmed findings if the findings are against the substantial weight of the evidence. Doyle's testimony, and that of her close family members, is not sufficient to show that the hearing officer made a determination that was against the substantial weight of the evidence. Accordingly, the Court rules that the hearing officer did not err in finding that Doyle's statements regarding her subjective symptoms were not credible.

**B.  Weight of Evidence From Non-Examining Physicians**

**1.  Doyle's Argument**

Doyle claims that the hearing officer relied too heavily on the reports of non-examining physicians and discounted the opinions of her direct treatment providers. Pl.'s Br. 9. To support this argument, Doyle points to the hearing officer's reliance on non-treating physicians who state that Doyle does not have a panic or anxiety disorder, and further argues that

simply because she does not have a panic disorder does not lead to the conclusion that she is not disabled.  Id. at 9-10. Although Doyle does not point explicitly to conflicting reports by treating physicians, she nonetheless concludes that, had the hearing officer placed less weight on the opinions of non-treating physicians, he would have found that Doyle was not capable of performing light work due to the effects of her cardiac related symptoms.  Id.

### 2.  Legal Framework

Doyle correctly argues that in nearly all circuits that have addressed the question, the general rule is that "the written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability.  The advisers' assessment of what other doctors find is hardly a basis for competent evaluation without a personal examination of the claimant."  Vargas v. Sullivan, 898 F.2d 293, 295-96 (2nd Cir. 1990) (quoting Allison v. Heckler, 711 F.2d 145, 147-48 (10th Cir. 1983)) (internal quotation marks omitted); see also Woodward v. Schweiker, 668 F.2d 370, 374 (8th Cir. 1981); Landess v. Weinberger, 490 F.2d 1187, 1190 (8th Cir. 1974); Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982).  The regulations, however, explicitly state that the hearing officer may consider other evidence, defined as "statements or reports from [a claimant, her] treating or

nontreating source, and others about [a claimant's] medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how [her] impairment(s) and any related symptoms affect [her] ability to work." 20 C.F.R. § 404.1529(a). Therefore, the hearing officer may consider reports of non-treating sources, but the conclusions of a non-treating source should be afforded less weight than those of a treating physician.

### 3. Appropriate Reliance on Treating and Non-Treating Physician's Reports

The hearing officer candidly stated that he gave "great evidentiary weight to the physical residual functional capacity assessment of Dr. Colb." Admin. R. 16. Dr. Colb is not a treating physician; rather, he is a medical consultant designated to review the record and provide an assessment for the sole purpose of determining Social Security Disability eligibility. Id. at 546-53; Def.'s Br. 8. Had the hearing officer simply relied on Dr. Colb's assessment and nothing more, his decisions could fairly be found to be against the substantial weight of the evidence. The hearing officer, however, did not rely solely on Dr. Colb's report, as Doyle now represents. Instead, the hearing officer first noted a report by Dr. Bradford, Doyle's primary care physician. Admin. R. 16. He then referenced Doyle's direct testimony to support his

decision.  Id.  The hearing officer describes the weight he gives to Dr. Colb in the same paragraph in which he addresses the psychiatric report of Dr. Clark, a non-treating psychiatrist, and Dr. Bradford's report stating that Doyle's numerous medical tests produced normal results.  Id.

The reports by medical consultants Dr. Colb and Dr. Clark are not inconsistent with reports by direct care physicians such as Dr. Bradford or with Doyle's own testimony.  Because the reports of the treating and non-treating physicians are not in conflict, it makes no real difference whether the hearing officer weighed one above the other.  Evidence from both treating and non-treating physicians supports the hearing officer's finding of disability.  Therefore, the hearing officer did not err by giving undue weight to non-treating physicians' reports over the reports of treating physicians.

## C.   Failure to Conduct Analysis of Physical Medical Disability

### 1.   Doyle's Argument

Doyle claims, at the close of her argument, that the Hearing Officer "erroneously analyzed the case as a psychiatric case."  Pl.'s Br. 10.  To support this claim, Doyle appears to point to the hearing officer's stated reliance on non-treating psychiatrist Dr. Clark's report that Doyle's panic attacks do not constitute a severe impairment.  See id. at 9; Admin. R. 16.

### 2.   Legal Framework

Doyle has the burden of proving that she is unable "to
engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment which can
be expected to result in death or which has lasted or can be
expected to last for a continuous period of not less than 12
months."  42 U.S.C. § 423(d)(1)(A).  The hearing officer must
conduct the required five-step analysis when determining whether
the claimant is either physically or mentally disabled.  20
C.F.R. § 404.1520(a)(4).  The hearing officer is required to
consider the entire record when making the determination.  Id. §
404.1529(a).

### 3.   Analysis of Physical Medical Disability

Doyle misunderstands the hearing officer's reliance on Dr.
Clark's report in the context of the entire decision.  It is not
entirely clear from the record what the underlying causes of
Doyle's symptoms were.  She claims a disability resulting from
costochondritis, sinus tachycardia, palpitations, and migraines.
Pl.'s Br. 4.  Several treatment providers sought both physical
and psychological causes of the origin of her chest pain, heart
palpitations, and resulting migraines.  Admin. R. 352-64, 378-
79, 523-25, 557.  Therefore, medical reports concerning Doyle's
psychological health are part of the recorded evidence in this
case.  Additionally, on Doyle's Disability Report, she lists

anxiety disorder as a condition that limits her ability to work. Id. at 143. Because the hearing officer must make decisions by considering the entire record, it is proper that he considered reports concerning Doyle's psychological health even if the underlying medical concern ultimately turned out to be physical.

Additionally, the hearing officer did not conduct an analysis of Doyle's psychological health at the expense of a physical medical analysis. Rather, he considered both the possibility of a psychological cause of Doyle's alleged disability as well as a physical cause. The hearing officer conducted a thorough analysis of potentially limiting mental health conditions. Id. at 11-12. Subsequently, however, he proceeded with an equally thorough analysis of Doyle's physical health, including physical reports addressing her cardiac symptoms. Id. at 12-15. The hearing officer noted test results from several physical medical tests and multiple reports from medical doctors. Id. Doyle herself is unable to point to a specific item of physical medical evidence that the hearing officer overlooked. See Pl.'s Br. Simply because the hearing officer analyzed the claim from both a psychological and a physical medical perspective does not render the analysis erroneous. The hearing officer thus did not err in analyzing the case as a possible psychiatric disability as well as a physical one.

## VI. CONCLUSION

The hearing officer's determination that Doyle's testimony as to the limiting effects of her symptoms was not credible is not against the substantial weight of the evidence. Additionally, treating and non-treating physician reports were given appropriate evidentiary weight. Finally, the hearing officer did not erroneously analyze the claim as a psychiatric rather than a cardiac disability. The Court thus DENIES Doyle's motion for judgment, ECF No. 14, and GRANTS the Commissioner's motion for judgment, ECF No. 17.

**SO ORDERED.**

_/s/ William G. Young_
WILLIAM G. YOUNG
DISTRICT JUDGE